IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| STEPHANIE DENHAM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-6222-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff brings this proceeding pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's final decision denying plaintiff's application for social security disability benefits. Plaintiff asserts disability beginning March 13, 2001, due to fatigue, weakness, and peripheral neuropathy caused by the side-effects of breast cancer treatment.    After a hearing, an administrative law judge (ALJ) determined that plaintiff was not entitled to benefits.

1 - ORDER

Plaintiff contends the ALJ erred in: (1) rejecting plaintiff's testimony; and (2) rejecting the opinion of her treating oncologist.

1.   Plaintiff's Credibility

At the hearing, plaintiff testified regarding pain, fatigue, neuropathy, vision problems, and problems with memory and concentration that significantly limited her activity. She also testified to being so tired she could not leave the house. Plaintiff testified that her impairments prevented her from returning to work. The ALJ rejected plaintiff's allegations of disability to the extent alleged.

In rejecting a claimant's testimony, the ALJ must perform a two stage analysis. Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage is the Cotton test. Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that she produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged. In addition, there must be no evidence of malingering. A claimant need not show that the impairments in fact did cause the symptoms. Id. at 1281-82. The claimant need not produce objective medical evidence of the symptoms themselves or their severity. Id. at 1282. Once a claimant produces evidence to meet the Cotton test

2 - ORDER

and there is no evidence of malingering, then the analysis moves to the second stage.  Plaintiff produced a statement from her treating physician that the symptoms described are being seen more and more with long-term cancer survivors.

Under the second part of the analysis, the ALJ must analyze the credibility of a claimant's testimony regarding the severity of her symptoms.  The ALJ can reject a claimant's symptom testimony only if she makes specific findings, stating clear and convincing reasons for doing so.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings.  Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).

In determining a claimant's credibility the ALJ may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . .  In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . .  Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284.

The ALJ rejected plaintiff's allegations based on her reports to

3 - ORDER

her medical providers that indicated that she had little to no limitations during much of the alleged period of disability.  Tr. 20. On June 1, 2001, plaintiff reported to Doctor Gary Lee that she planned to vacation in Jamaica and was enjoying her retirement riding horses and reading books and remained quite active.  Tr. 282.  Dr. Lee also noted that she looked great and was doing well.  Tr. 282. On September 19, 2001, plaintiff reported that she felt well with no complaints and was fully active.  Tr. 205.

On December 2001, plaintiff reported that she was actively involved with teaching her Dachshund to track and that her energy level was good.  Tr. 280.  Dr. Lee reminded her at this visit that she is "their most important observer and that additional studies and evaluation are very dependent upon what she tells us."  Tr. 280.

On March 20, 2002, plaintiff reported to being fully active and ambulatory with no new problems and no fatigue or change in mental status.  Tr. 203.  On June 9, 2002, plaintiff reported that she remained physically active training her Dachshund to hunt.  Tr. 277.

On October 16, 2002, plaintiff reported that she was doing pretty well, but had an equilibrium problem.  Nonetheless, she reported being fully ambulatory, active and feeling well.  Tr. 308. She reported no interference with her activities of daily living. Tr. 309.

However, on November 25, 2003, plaintiff reported having felt fatigue and exhausted for the last three years, being easily winded

and having to stop walking due to leg and foot pain. Tr. 322. But, on May 5, 2004, numbness and balance were significantly improved, and she reported that she recently bought a new horse and continues to be fully active. Tr. 329.

The ALJ's reference to these reports that contradict her hearing testimony provide clear and convincing reasons for rejecting plaintiff's allegations to the extent alleged. In addition, the ALJ noted that plaintiff's husband reported that plaintiff rode horses monthly/weekly, but that plaintiff initially denied riding and then claimed only briefly riding two or three times total. Tr. 20, 141, 404-05. In addition, plaintiff's written statement indicated that she rode two to three times a month in the summer. Tr. 125. The ALJ made specific findings pointing to substantial evidence of inconsistencies in plaintiff's allegations providing clear and convincing reasons for rejecting her testimony. Moreover, the ALJ pointed to medical evidence that showed a lack of support for plaintiff's allegations such as a psychological evaluation that refuted plaintiff's claims of problems with memory and concentration. Tr. 20, 358-59. The ALJ also noted medical evidence attributing fatigue and shortness of breath to plaintiff being out of shape and not to a medially determinable impairment. Tr. 322. Further, the ALJ noted plaintiff's reports that medication relieved most of her pain. Tr. 408. Accordingly, the ALJ did not err with respect to plaintiff's testimony.

5 - ORDER

2.    Treating Physician

On July 6, 2004, Dr. Lee opined that plaintiff's description of her fatigue and cognitive problems is consistent with the symptoms they see in long-term cancer survivors.  Tr. 335.  Dr. Lee opined that plaintiff suffers significant fatigue and reduced cognitive abilities.  Tr. 334.  The ALJ gave the opinion little wight as it was primarily based on plaintiff's self-reporting and because Dr. Lee was unsure of whether the noted problems were related to her treatment or simply due to aging.  Tr. 335.

Where an ALJ chooses to disregard the opinion of a treating physician, he must set forth clear and convincing reasons for doing so if the treating physician's opinion is not contradicted by another doctor.  Fife v. Heckler, 767 F.2d 1427, 1431 (9th Cir. 1985).  If a treating physician's opinion is contradicted by another doctor and the ALJ wishes to disregard the opinion, the ALJ must set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  To meet this burden the ALJ must set out a detailed analysis and thorough summary of the facts and conflicting clinical evidence, state his interpretation thereof, and make findings.   Embrey v Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

As noted above, the ALJ properly found plaintiff's subjective reporting to be unreliable and therefore did not err in rejecting a treating physician's opinion based on unreliable subjective

6 - ORDER

complaints.

CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed and this proceeding is dismissed.


DATED this  5th  day of   Sept  , 2006.

                                    s/ Michael R. Hogan
                                  UNITED STATES DISTRICT JUDGE

7 - ORDER